from Ms. Liz Reardon. You may proceed. All right. Thank you, Your Honors. Good afternoon. Good morning. I'm Shannon Liz Reardon. I represent the plaintiff. I'm going to be sharing my time with the EEOC, who's taking five minutes, and I'd like to reserve three minutes for rebuttal, if I may. Okay. Okay. Thank you. So, Your Honors, the case here involves a situation where the district court took us on a two-year journey to get us to plead a case just right, and we submit that what happened here was the district court adopted far too high a pleading standard and dismissed this case erroneously multiple times on a motion to dismiss standard. The court treated this case like it was evaluating the case on summary judgment or after trial and didn't properly apply the pleading standard. So what the district court said, through all of its orders below, was that there are three factors that a plaintiff needs to show in order to establish a disparate impact claim. And the district court said that we satisfied two of the factors in their pleadings, but not the third. So the first one was that there is actually a significant disparity with respect to the protected group. The second is that the plaintiff needs to identify an employment practice. And the third is that there is a causal relationship. So the district court held from the very beginning that we had satisfied two and three from the complaint, but said that we hadn't shown that there was a significant disparity with respect to the protected group. Now— Before we get there, I do want to just—and you can tell me if you want to just reserve this for the EEOC's argument, but I understand the EEOC to be saying, even requiring plaintiffs to plead specific factual allegations, essentially to establish the Prima Fasci case, is an error of law. And then I'm going to butcher the name of the case, Spierkiewicz. And that we have cited that case, along with Iqbal, in multiple cases, you know, as Title VII case itself with Spierkiewicz, but saying that we don't use the Prima Fasci requirements as a pleading standard. And we have cited it multiple times then in Sheppard, in Austin, in Schmidt, in other discrimination contexts, saying you don't need to plead the elements of a Prima Fasci case to meet the Rule 8 standard of plausibility. It is a way. We can use it as a guide. It is a way to meet the plausibility standard, but it's not required. So—and I understand there's been 20-day letter action on Balding Hart, where we did, in fact, find someone had met the pleading standard because they had pled the elements of the Prima Fasci case. But I don't read anything of Balding Hart actually wrestling with Spierkiewicz and saying, or even actually holding, that it was required, as opposed to sufficient, to plead the elements. So are you going—do you want to explore that issue, or are you going to focus on whether you satisfy the pleading requirements for a Prima Fasci case? Yes. I'm going to let the EEOC address that primarily, but yes, you are correct. The Spierkiewicz case, Justice Thomas said that you don't need to even satisfy the Prima Fasci elements on a Motion to Dismiss on a pleading standard, and that has been adopted by this Court multiple times. What I'm focusing on here is that even if we had to allege these three things, we amply did. So in the first time around, with the first complaint, we simply—we explained the problem, we explained how the plaintiff had been impacted by it, and we said that ample social science research establishes that a customer base is going to have bias. We even said that Uber knows about this because it's cited to it in the past with respect to its concern over allowing tipping, and then the Court's first dismissal order was very brief and basically said, the complaint is too sparse. You say that there's social science research out there, but you haven't cited it. So we said, okay. So we went back, and in the second complaint, the first amended complaint, we cited ample social science research, which supported allegations for the first element, that there is, in fact, a disparity with respect to the protected group. Customer feedback is going to have bias. And we even cited cases that were pretty specific to this context, the gig economy, the over-reliance on customer feedback by gig companies is creating a disparate impact against minority workers, and the social science even included studies of Uber itself. So the first complaint we think was sufficient because a short and plain statement of the complaint, we did that. The Court said, where's the social science research you're talking about? We put that into the next version of the complaint. And then we went back, and the District Court this time said, well, you're asking for a lot here because you're asking to unlock discovery about all of this data. This is a big case. You should go back and just do some more legwork to show me this really is an issue. I debated that with the Court and said, this really isn't required on a motion to dismiss standard, but if you insist, Your Honor, because I happen to have access to thousands of drivers because we've represented thousands of drivers, I'll try to give you more next time. So then we went and we filed a second amended complaint, which had the results of an actual survey that I conducted, which showed statistically significant impact on minority drivers based on the customer feedback system that's used for driver terminations. And then we went back to the Court, and that's when the District Court started nitpicking our data, nitpicking our survey, in which case I said, this isn't what we had intended to rely on at all to prove our case. We're just stating a complaint here. The issues that the Court was raising about, did I not word the survey exactly correctly, those were issues that could be debated in expert depositions, in a final study based on Uber's actual data. We probably would have worded that initial question a little differently, but we have something here. We've more than amply satisfied the standard. And the District Court went through this whole analysis saying, no, no, no, you used the wrong denominator, because the drivers you surveyed included drivers only who had been deactivated. So then he sent us back again, and I went back and resurveyed that group to say, were you deactivated or not? It turns out we had the right denominator, because we had a mix of drivers who did and did not have, had not been terminated. But then the District Court then came back and still said that we hadn't done enough, that we made it even more confusing. And through this whole process, the District Court just imposed way too high a standard at a motion-to-dismiss stage. I see that my time is running short, so I'll just get quickly to some of the arguments that Uber's made in its briefing. Just really don't get to the point here. Uber argues that we used a biased sample because they were our own clients, but obviously that's all we had access to, because we haven't gotten discovery yet. Uber says that it's absurd on its face that our statistics seem to indicate that more than 50% and up to almost 60% of drivers generally were deactivated. But as we noted in our opening brief, there's actually been recent published research that shows that up to 60% of Uber drivers do get deactivated. So again, this is just getting far beyond the level of detail and argument that would have been appropriate on a motion-to-dismiss. The issue is that we have established more than enough just to move forward. This case shouldn't have spent two years going through iterative complaints in which the District Court kept moving the goalpost. The first time the District Court said, well, you said that there's social science research, but what is it? We showed that. Then the court said, you need to do some more legwork. So we went out and we did the legwork. Then the court said, well, I don't really quite like the way you did the legwork. And then we clarified for the court that it actually was a survey of the proper population. And then the court still said, no, you still haven't done enough. Go do it again. And at that point, we had no idea what was ever going to satisfy the District Court. And so that's why we filed this appeal and are before you. Thank you, Counselor. I think you wanted to save some time for review. Yes. Yes. Thank you. All right. So we're here. Oh, now from the EEOC. Okay. Thank you, Your Honor. I'm sorry. Your name is? Because we actually on the day sheet, I don't have you listed. Georgina Yeomans for the EEOC. Thank you. Thank you. Judge Sung, I'll start with your question. And yes, that is our theory. And I agree with your reading of the Bold and Harge decision. It did find that the plaintiff adequately pled a prima facie case, which can be a prism through which to assess the complaint, but it's certainly not the yardstick against which to measure the adequacy of the complaint. And that case, I think, actually is a helpful one because it does rely on one of the two that we've highlighted in our brief. It falls within the path of identifying a challenged employment practice and identifying causation. And from that, the court can infer that a disparate impact would arise. In that case, the court found it would be obvious that there would be a disparate impact. But of course, that is not the standard for a complaint. That is whether the allegations plausibly suggest that a disparate impact would arise. So, setting the survey aside, we think that the district court erred in dismissing Lew's first, second, and third amended complaints because all of those complaints contained the allegations about social science research, finding that racial bias infects the relationship in comparable situations and finding a high likelihood that it would infect this very same situation that's being challenged in this lawsuit, coupled with Uber's own evaluation that racial bias infects its rider's evaluation of driver's services, which was shown in their reluctance to add a tipping mechanism on the app. And they actually relied on social science research as well. And just, so I understand Sreerak Raj said there is no requirement to plead a prima facie case in order to survive a motion to dismiss, and then we have multiple cases applying that in the ADA, in Title VII, in the ACA disability case, saying, repeating, citing both Sreerak Raj and Dick Paul Twombly, saying there is no requirement to plead the elements of a prima facie case, the standard is plausibility. You can plead the elements of a prima facie case, or we can use the elements of a prima facie case as a guideline to determine whether the claim is plausible. What I don't see, and I had trouble finding, are many examples in which courts have found plausibility other than by using the elements of a prima facie case as a guideline. And I'm still looking for some guidance as to how to measure plausibility without using the requirements or the elements of a prima facie case as a guideline. Does that make sense? It does make sense. And it is a little bit complicated in the disparate impact analysis where the elements are the same, or they reflect the ultimate elements of liability, which is different from disparate treatment, the McDonnell-Douglas factors. I think it's—SWRCOWICS still, I think, applies the disparate impact context, but the elements become perhaps even more relevant to assessing whether there's a plausible claim. I think the real difference and the thrust of SWRCOWICS was we don't want to import summary judgment standards, for instance, the prima facie case under McDonnell-Douglas, which is an evidentiary tool, into the pleading standard. And I think that's what the district court did here when it said, have you supported each of the elements? And what the district court did not do was give Mr. Liu the benefit of the inferences to which he's entitled at a motion to dismiss. And so, you know, in the disparate impact context, perhaps the elements are not going to be that different in terms of assessing whether there's a plausible claim and measuring the prima facie case, but what was really missing here was the benefit of the inferences. And so we highlight sort of these two paths that are apparent from the case law, each of which relies on inferences. One path is to plead the challenged practice and to plead an impact. And from those allegations, the courts can infer that there's causation, that there's a causal link. That's in the Chayadez case, for instance, where there were multiple sort of inputs into the hiring process that could have caused the disparity that the plaintiff highlighted, but the court inferred that they had identified the correct causal link. The second path is the one that we think that Mr. Liu's first, second, and third amended complaint satisfies, which is to plead the challenged practice and to plead causation. And from that, the courts can infer an impact. We sort of use the shorthand real-world conditions to refer to causation. And this is the path that is present in the Reyes case from the Fourth Circuit, in Carson from the Eighth Circuit, and that the courts discussed favorably in Mandela and in Boynkin, where the plaintiffs identify a fact about the world that makes it plausible, that plausibly suggests that a disparate impact would arise from the challenged practice. I see I have 10 seconds left. I just want to address the argument I anticipate from Uber that this is a forfeited argument. In addition to the points that Mr. Liu makes in his reply brief about why this is not forfeited, I will point out that he made this very argument at FER 41 to 42 in resisting the motion to dismiss the first amended complaint and actually cited the Carson case from the Eighth Circuit that we rely on. Thank you very much. All right. Thank you, counsel. All right. So we'll hear from Mr. Spertus. Did I pronounce that correctly? You did. All right. Thank you, Your Honor. All right. That so rarely happens. Good morning, Your Honors. May it please the Court. Andrew Spertus on behalf of the Defendant in Appley, Uber Technologies, Inc. This Court should affirm Liu's pleadings amount to a theory in search of supporting facts rather than what rule 8 Supreme Court and Ninth Circuit precedent requires, which are well-plaid facts to support a claim. Liu was given five chances to state a valid claim. After the first four tries failed, the District Court gave him yet another chance, allowing him to amend his third amended complaint after dismissing it without prejudice. But rather than putting in the requisite work on the front end, as the District Court instructed, and despite having access to thousands of drivers from which to gather factual allegations to attempt to plead his claim, Liu's counsel circumvented the District Court, declined to amend, and appealed. Now on appeal, Liu and the EEOC are asking this Court to upend binding precedent and apply a lower pleading standard to his case, which would allow him to proceed to discovery before he has supporting facts based on the mere possibility that he may ultimately be able to prove his claim. That's not the standard. Can you address the Supreme Court's decision in Swierkiewicz? Absolutely. Absolutely. So, throughout their briefs, Liu and the EEOC repeatedly state that this notion that Liu should not be required to plead a prima facie case, and it does go all the way back to the Swierkiewicz decision. I don't know. It's probably the fifth different way that it's been said, but, you know, the case I'm talking about. If you actually read that decision, it states that a plaintiff need not establish a prima facie case at the pleading stage, and that is different than what the District Court did. That's different than what courts subsequently— How is that different? I mean, he certainly seemed like he was making them prove a prima facie case at the pleading stage. I disagree, Your Honor, in the sense that, assuming that Liu had properly pled statistical data to allow a comparison between relevant comparator groups to show a significant disparity, I highly doubt it would have been sufficient in terms of being supported by corroborating evidence or living up to, you know, statistical standards and methodological standards of scrutiny that we would certainly attack during a discovery phase. That's not what the judge required. The judge simply looked at the survey data that Liu submitted and said, all you've given me is—you've basically—I can't make a comparison between apples to apples here, but it's not even apples to oranges. It's like—it's just apples. It's just people whose accounts have been deactivated. There was nothing that could be derived from that. There's no disparity whatsoever. So respectfully, what the district court did in terms of the starting point of the analysis was look at the elements of a prima facie case and see if Liu could plausibly plead each of the elements. Now— The problem with that, I was like, read all the district court's orders, and he literally said Liu's complaint satisfies the second and third elements, identifying a business practice and showing it could plausibly cause a disparate impact. If you draw reasonable inferences in favor of the non-moving party, then you can infer that, in fact, a disparate impact occurred. And the only way that the plaintiffs could actually prove that is to get discovery, because only Uber has the data about its existing workforce and who it has terminated based on customer ratings and the racial composition of those two groups. I disagree with that, Your Honor. I don't think that this is the case to focus on a lack of access to data, because Plaintiffs Counsel had access to 20,000 drivers. She had access to this social science research, and surely if factual allegations existed to demonstrate a significant disparity, even at the pleading stage, as all of the plaintiffs in many of the cases before the court needed to do, is produce evidence of a statistical disparity, even if it's not sufficient to establish a prima facie case, with access to 20,000 drivers, Liu's counsel should have been able to do that. You can compare it to a situation like the Mandala case or Chaydez. Both of those cases involved people who were not part of the workforce, they were applying for a job. They didn't have access to any Uber. So it's a different claim, right? I mean, it was about they needed to compare the existing qualified applicant pool with those who got hired, and the court's quibbles were with how it defined the qualified applicant pool. So, but here, you know, this is a termination case, all the relevant data is Uber's. It's who are, who is the workforce, and who has been terminated, and the racial composition of those two things. I don't even think the 20,000, I mean, the 20, I don't know very much about, you know, the former client base and how that maps onto what they would actually have to prove, and I think that's part of the problem, is right, that, you know, the counsel had to do a survey just to figure out, out of that 20,000, who was actually terminated and why, and that's part of what the district court was faulting the survey for, but this seems to be a case where even, you know, given that the district court said you plausibly satisfied business practice and causation, that we could draw then the reasonable inference that those two things would have the disparate impact, and they didn't actually need to prove that with evidence at the pleading stage. Not prove it, Your Honor, but plausibly plead it. And you can look at cases, the Frappe case, I think it's a 10-second case. Why isn't the reasonable inference that you can draw from everything, the first two elements, nudge it into the realm of plausibility? Well, to start with, the social science research is, for the most part, very general in nature and out of context, and Twombly says that you need to look at allegations in context, so that's certainly not sufficient on its own. That's quibbling with that, and you're disagreeing with the district court's statement that those two elements have been plausibly alleged. What I'm saying, given that the district court said you plausibly alleged both business practice and causation, why isn't the reasonable inference that then those two things would cause the disparate impact? Because the starting point, as always, is the elements of the claim, and being able to plausibly allege each of those elements, except in very exceptional circumstances or unique circumstances. And that's a case like the Bold and Harge case, and that's a case like the Jenkins case, where the impact of the policy on the individuals bringing the claim is obvious. So in Jenkins, for instance, there was the individual whose religion required her to wear a skirt, and the employer's policy said, well, you have to wear pants, and if you don't wear pants, you're fired. And so, in that case, the possibility for a disparity is obvious on individuals. But here, what we have is a business practice that they have, the district court said, plausibly and, you know, it's based, terminating people based solely on customer ratings. They have social science evidencing customers have racial bias when they make customer ratings. So why isn't it obvious, then, if you have racial bias when you rate drivers, that there would be a disparate impact in the use of those ratings? It's possible, but it's not plausible. It's equally possible that there isn't a significant disparity. It's certainly something that can be conceived of. And I think everybody is concerned about discrimination in the world, and certainly it exists. But it's not the pleading standard to be able to point to social science research of a general nature and apply it to a workforce and a practice and be able to advance past the pleading stage just based on that. And if you look at the few pieces of Uber-specific social science articles that are cited to by the plaintiff, it's essentially a conclusion. There's no facts. There's no data to support this specific practice, whether bias in customer ratings to the extent it exists results in a significant disparity with respect to account deactivation. I certainly have no disagreement that after they get discovery and they get the data about it, they can prove that the business practice and the causation and the impact. But I don't understand how they can actually prove that until they get discovery. And so since they can't prove that until they get discovery, why aren't they at the pleading stage where we have to draw all reasonable inferences in their favor? If they plausibly allege business practice and causation, why aren't they entitled to reasonable inference on disparate impact? The District Court and Uber is not saying that they have to prove it. They have to plausibly allege it. And with the information that Plaintiff's Counsel had at their disposal, as an example, there's a case out of the District of Columbia. It's in the papers. It's the National Housing Alliance case. Before that case was filed and in the complaint, the plaintiffs included demographic information with respect to the allegedly impacted neighborhood as it compared with Washington, D.C. as a whole. And then they sent out testers into the world to gather evidence, qualitative evidence of a disparity of these issues. And they put all that into the complaint. So the idea that it can't be done simply because of a... And your argument is that they could have done more. It still doesn't address my question as if they didn't, why doesn't the other, why don't the other plausible pleading of business practice and causation give rise to a reasonable inference? Because that's not the, that's not the analysis that Iqbal and Twombly have developed for looking at these claims, which starts with the elements. You have to, you have to plausibly be able to allege each of the elements, except in cases where the disparate impact on the individuals in question is obvious. And that's like the Bold and Hardridge-Jenkins case. But it's not as though, and so the Mandela case and the second... The answer of the court's assumption about causation, I mean, because the causation element presumes, I mean, you have to establish the, you know, that there's a disparity and then you have to show the causal connection. But in finding for purposes of this, that that had been satisfied, I took the order is assuming that the disparity had otherwise existed, then causation would of course follow. Correct. Had Lew established that there was a disparity, it was plausible to... But that assumption by its nature doesn't provide any foothold to infer the pattern from it. No. It's a separate element that assumes that in the event of disparity can be shown as in almost all the other cases that are before the court, then using that social science research and Lew's own allegations, that could be used to establish causation once a significant disparity had plausibly been alleged. And that's not what happened. Lew failed to do that. So I just wanted to reiterate or get to a specific point with respect to the test as, certainly as Uber sees it. In the Mandela case, specifically addresses this, what we're putting forward as the appropriate test, which is that you look at each of the three elements of a disparate impact claim. Now Lew and the EEOC, their position is that, oh, well, Mandela is an out, Second Circuit's an outlier because they've rejected Swierkiewicz post-Iqbal Twombly or whatever it is. That's not actually the case. In the Mandela case, the Second Circuit goes back and reconciles all of its prior cases, reconciles Swierkiewicz and says, this is the standard to analyze a disparate impact case. You go through each of the three elements, except, of course, in cases where the disparity is obvious and can be assumed, which the district court here found that it couldn't be. If you look at cases, it's not that the Second Circuit is an outlier. In the Tenth Circuit, I think it's the Frappede case. I don't know if I'm pronouncing that correctly, but in the Fourth Circuit, the Reyes case, they do the same thing. They set forth the elements of a prima facie case of disparate impact, and they see if the plaintiff has plausibly alleged that. And there are cases in the Ninth Circuit. The Bold and Harge case, as you referenced, starts the framework by saying, these are the three elements to establish a prima facie case. I'm trying to figure out, to be honest, if I were drafting this complaint without discovery, what would I allege? I would allege that there is a business practice that incorporates customer bias. I would allege that social science research shows that that exists, that that causes customers to rate racial minorities on average lower than white drivers, and that on information and belief, that causes a racial disparity in Uber, but I can't prove that until I have discovery and I can get all the data from Uber. That's an evidentiary standard I understand the plaintiffs have to actually prove their claim at the end of the day, which says we're not asking plaintiffs to provide evidence at the pleading stage. What we're trying to say is, is their claim plausible, so that they should get the keys to open the door to discovery, and then read the district court saying over and over again, their claim is plausible, but you haven't proven, you don't have enough evidence, specific allegations of disparate impact, but it seems to me that the district court was effectively importing the evidentiary burden into the pleading stage. Why wasn't that error? Respectfully, Judge Sung, with respect to the social science research, just to correct something, the social science research by and large does not address, it addresses bias generally in customer ratings. It's out of context, and context is important, I believe it's Twombly that says that. You look at the allegations in context. There's very generalized social science research, none of them speak specifically to the star rating system, and the impact of that customer bias on deactivations with respect to minority drivers. But I think that that seems to me a different argument, that they really just haven't even met the plausibility standard on, you know, on business practice and causation, which would be, I would say, an alternative ground for affirming, but that to me doesn't address what I think is the legal error, you know, that the district court committed in terms of requiring essentially evidence of disparate impact. Yeah, so to me, I'm happy to consider your argument that, you know, even if the district court, you know, that you should affirm because they didn't meet the plausibility standard anyway. But there's, I'm trying to laser focus on assuming because the district court did say, you know, you plausibly pled these other things, why don't they get, why did they have to do more on disparate impact, given in this case, that all the data they needed to show, I mean, I understand you're saying, you know, this plaintiff's counsel happens to be fortunate enough to already have an existing database, but that's not going to be your typical plaintiff, and we're trying to deal with a pleading standard that would apply to all plaintiffs. So there's, why would they, why was it not legal error for the district court to expect them to provide essentially evidence of disparate impact at this stage? As an initial matter, we did include in our papers an alternative argument that causation was not established either through loose allegations. It would have been a legal error in this situation for the court to simply skip over the disparity element. There is no case, except in situations where a disparity is obvious, where there are not with the individuals who are impacted. There's not a case out there. In disparate impact cases, a lot of the cases say this, are, face some measure of difficulty with respect to the same obstacle that Lou alleges that he faced in this case. But again, this is not that case. This is not that case. You have the Chydez case, where the individual was an employment applicant and was able to cite to demographics about the surrounding, the area surrounding the work site. He was able to get his hands on a picture of the workforce at a particular work site to show a visually obvious inconsistency between the larger demographic data and the racial composition of the employer's workforce. So that person was in an equally, well, actually a far more disadvantageous position with respect to information than Lou was. So, to answer your question, Your Honor, except in cases where the disparity can be assumed because it's obvious, based on, for instance, someone in a religion who's required to wear skirts is going to be fired because the employer requires them to wear pants, you must plausibly allege each of the three elements. And the failure to consider whether the second, whether the first element was met, disparity, that would have been the legal error. That would have been removing from the analysis a major fact, the fact that exists in every case except those where the disparity can be assumed. All right. Thank you, counsel. Thank you. We'll hear rebuttal now. Your Honor. We put two minutes on the clock. Okay, thank you. I think I had reserved three, actually, and I didn't use my last minute, so. I'll give you three. Okay, okay. Thank you. So, based on Uber's argument, it's not clear how a case like this could ever have been pled. It wasn't clear what the district court was looking for from us. It seemed clear the district court was ready to dismiss any complaint that we alleged. As you pointed out, Judge Song, plaintiffs very rarely have access to such data. The fact that we were able to plausibly allege... Iqbal is very clear that you can't say, well, they have the data, and unless I get it, I can't plead it. Iqbal says you don't unlock the doors of discovery unless you plead plausibly the elements, and so you still have to plead plausibly the element of significant disparity. Yes. I think it was incredibly plausible from what we pled from the beginning, and then when we actually cited these social science reports, if you look at them, they are extremely pertinent to the claim here. They actually talk about... One of them actually talks about the customer rating system at Uber. Others talk about the use of customer reviews on gig platforms and the disparity that that creates on minorities. Uber's counsel just said... And then when we did go ahead and do the survey, because we happen to have access to this data, this database, Uber's counsel just said, again, that we used the wrong denominator, and that's why it wasn't plausible. And that just completely ignores what we did in the third amended complaint, which is clarify that we used the right denominator according to the district court. The survey included drivers who had been deactivated and had not been deactivated. And we compared the race, the proportion of drivers of various races who were deactivated based on star ratings as compared to all drivers of that race. And there was a significant disparity among non-white drivers and white drivers. I don't know what more we could have done, and clearly that makes our allegation plausible that there was this disparity. Uber's arguing both that we should have done more with the data we had, and it also argues in its brief that our data was fatally flawed, because the group that we were able to access was our own clients, and drivers who have retained an employment attorney are more likely to have been deactivated. That actually didn't bear out from the data, because our further inquiry showed that about half of the people who were surveyed had not been deactivated. So there's no reason to expect that our database was any different from what the broader Uber data would look like, but of course we can't possibly know that until we get into discovery. But we far and away did more than enough to plead all three elements, even if we have to plead all three elements. I just don't know how else in a case like this it could have been pled. We did everything and more that could have been required. I want to also just touch very briefly on the intentional discrimination issue. In the judge's first order, he actually said that he could envision a situation in which there could be intentional discrimination when an employer continues to use a method that impacts workers' employment that it knows has a racially disparate impact, and we also attached a case from Worcester that held just that. And we did plead that from the very beginning. And again, the court also just dismissed that and said, well, maybe see what you get in discovery and maybe I'll let you add it back in later. That's not usually how it works. We pled it. It was there. It's plausible. Uber itself, as we cited in the complaint, acknowledged the racial bias that its customers harbor and nevertheless it continued to use this practice as a way of terminating the workers. Thank you, Your Honor. Thank you, Your Honors. I thank both counsel in this case for their arguments in the case of Liu versus Uber Technologies will be submitted. And with that, we are completed our session for this morning and we will be in recess for the day.
judges: COLLINS, FORREST, SUNG